IRVING, J.,
DISSENTING:
¶ 16. With respect for my colleagues in the majority, I must dissent from the ma *1249 jority’s decision to affirm the trial court’s grant of summary judgment in favor of Cellular South, Inc. (Cellular South). I agree with the majority that the contract that Gregory S. Dalton and Cellular South executed is not ambiguous and that under the terms of the contract Cellular South is given the unilateral right to determine whether it is in Cellular South’s best interest to continue the agency relationship created by the contract. However, I cannot agree that there is no genuine issue as to whether Cellular South terminated the contract in accordance with the terms of the contract.
¶ 17. Cellular South sued Dalton, seeking a declaratory judgment to the effect that Cellular South had acted properly in terminating its agency relationship with Dalton. After discovery, both parties filed motions for summary judgment. The Winston County Circuit Court found that the agreement between Dalton and Cellular South was unambiguous and granted summary judgment on behalf of Cellular South.
¶ 18. At the time that the complaint was filed, Dalton owned a Radio Shack in Louisville, Mississippi. In April 1992, Dalton entered into an agreement with Cellular South to work as an agent selling cellular telephone service. Cellular South drafted the initial agreement, which was replaced in March 1993. It is unclear whether Dalton had any input as to the terms of either agreement. Dalton’s agency relationship with Cellular South lasted for thirteen years, during which time Dalton procured over six thousand customers for Cellular South. In return, Dalton received substantial commissions for his sales of Cellular South subscriptions.
¶ 19. In December 2003, Terrell Knight, then director of sales for Cellular South, sent Dalton a letter informing him that his agreement with Cellular South was being terminated effective February 6, 2004, as a result of “a reorganization of Cellular South’s retail distribution plan.... ” Believing that the terms of his contract prohibited Cellular South from terminating the agreement as it did, Dalton refused to sign the full and final release sent to him by Cellular South. On January 24, 2006, Cellular South filed suit against Dalton, requesting a declaratory judgment to the effect that it had not acted contrary to the contract’s terms. On April 5, 2007, the court ruled in favor of Cellular South, finding that it had the right under the contract to terminate its relationship with Dalton.
¶ 20. The relevant portions of the contract between Dalton and Cellular South state:
3.1 Term: The term of the Agreement shall be one year, commencing on the date specified in Exhibit D of this Agreement, unless otherwise terminated or renewed pursuant to the provisions hereinafter provided. Cellular Holding[3] is cognizant of the increasing value of the Agency relationship to a successful AGENT and therefore will terminate a successful Agency relationship only if Cellular Holding determines that the continuation of the Agency relationship would be detrimental to the overall well-being, reputation and goodwill of Cellular Holding.
3.4 Default: In the event AGENT fails to perform any of its obligations under this Agreement and such failure continues unremedied for a period of thirty (30) days after written notice is given by Cellular Holding to AGENT, *1250 then Cellular Holding may thereupon elect to cancel and terminate this Agreement, which termination shall be effective immediately upon the expiration of said thirty-day period.
3.5 Termination: Either party may terminate this Agreement by giving the other party written notice of its desire to terminate at least thirty (30) days prior to the intended date of termination.
[The section goes on to list specific instances under which Dalton’s conduct could result in termination by Cellular South.]
4.6 Sales Activity: AGENT shall act as a sales AGENT appointed by Cellular Holding for Cellular Holding’s Cellular Telephone Service. AGENT shall provide appropriate sales facilities and use its best efforts to enhance the sale of Cellular Holding service and to solicit customers using administrative procedures established from time to time by Cellular Holding;
¶ 21. The majority finds that the loss of profits by Cellular South is a sufficient basis, under the express terms of the contract, for Cellular South to terminate the contract. I disagree with this myopic interpi’etation. The contract authorizes termination by Cellular Holding “only if Cellular Holding determines that the continuation of the Agency relationship would he detrimental to the overall well-being, reputation and goodivill of Cellular Holding.” (Emphasis added). It is clear to me that the financial well-being of Cellular South is only one of three criteria that must be met before termination is authorized. The other two are that there be a detriment to the reputation and goodwill of Cellular South.
¶ 22. In support of its motion for summary judgment, Cellular South offered the affidavit of Hu Meena. Meena explained that Dalton’s agency relationship was being terminated because:
Mr. Dalton’s was one of approximately ninety (90) agency relationships terminated by Cellular South at my direction in late 2003 and early 2004. Cellular South’s decision to discontinue the use of independent agents was in large part due to the administrative burdens that it had experienced in managing independent agents throughout its service area. These administrative burdens included assigning a dedicated management employee to oversee the agents, keeping up with commissions earned by the agents, which did not vest until the customer had remained with Cellular South for a pre-determined period of time, and insuring that agents were marketing Cellular South’s service in a manner consistent with Cellular South’s corporate marketing strategy.
At or about the same time that I made the decision to terminate the independent agents used by Cellular South, Cellular South’s own network of company-owned retail stores had become sufficient to perform its necessary retail functions.
Cellular South’s reputation for good customer service and the uniformity of the customers’ experiences in dealing with Cellular South, regardless of whether they contact Cellular South by visiting its stores, calling on the telephone or using the Cellular South website, are critical to Cellular South’s ability to maintain and grow its customer base. At the time I made the decision to terminate the use of agents, I believed and still do believe that Cellular South is better able to maintain its overall customer service standards without the use of independent agents.
*1251 To the best of Cellular South’s and my knowledge, Dalton’s agency was a “successful” agency in terms of sales. However, it was impractical for Cellular South to maintain some agents while terminating others, since the administrative burden of maintaining a few agents would have been very similar to the burden of maintaining them all. For these reasons, I determined that continuation of Cellular South’s agency relationships, including Dalton’s, would be detrimental to the overall well-being, reputation and goodwill of Cellular South.
As Meena explained in his affidavit, Cellular South allegedly determined that the continuation of any agency relationship was detrimental to Cellular South’s business. However, the affidavit contained no facts indicating that Dalton’s successful agency had caused harm to either Cellular South’s reputation or goodwill. It seems obvious to me that an agency that brought over six thousand customers to Cellular South could hardly be detrimental to either Cellular South’s reputation or goodwill.
¶ 23. As stated, the contract gives solely to Cellular South the right to terminate if and when the relationship with Dalton becomes detrimental to Cellular South’s well-being, reputation, and goodwill. However, it is important to note that these criteria are written in the conjunctive, not disjunctive. This language indicates to me that while Cellular South is the sole arbiter of whether the agency relationship has become detrimental to its well-being, reputation, and goodwill, that determination cannot be arbitrary and capricious and must be factually undergirded. In other words, since Cellular South at the time of the execution of the contract recognized and agreed that a continuing agency relationship would be of “increasing value to the agent” and, by correlation, of increasing burden, at least financially, to Cellular South, it could not later terminate the relationship simply because an agency had, in fact, become of increased value — thus raising the amount of commissions that Cellular South had to pay to the agent. To allow Cellular South to terminate the contract based on its obligation to pay increasing commissions to a successful agent is to sanction unfair dealings in contractual relations. I am not prepared to put the judicial stamp of approval on such unfair tactics.
¶ 24. In his letter, Meena indicated that Dalton’s relationship was being terminated because of the rising costs of maintaining agency relationships. It appears from the record that the most significant cost of Dalton’s agency relationship with Cellular South was the large commissions that Cellular South was paying to Dalton. Therefore, I believe that there is a significant question as to whether Cellular South terminated its agreement with Dalton because of a detriment to Cellular South’s reputation and goodwill or because of a loss of profits occasioned by Cellular South’s contractual obligations to pay higher commissions to Dalton, who had become a successful agent. Taking all the evidence presented in the light most favorable to Dalton, I believe that there are genuine issues of material fact that prevent the entry of summary judgment in this case.
¶ 25. In his reply brief, Dalton claims that “the motivation for his termination was to capture the commissions he was building up in the seven counties assigned to him. To put it more direct [sic], Dalton’s termination occurred not because of detriment to the overall well-being, reputation and good will [sic] to Cellular South, but to [sic] its greed.” My review of the record leads me to believe that there is a *1252 significant question as to the truthfulness of the reasons presented in Meena’s affidavit. The unilateral right given to Cellular South to determine when the agency had become a detriment to Cellular South’s well-being, reputation, and goodwill did not encompass or include the right to falsify the facts or the reason for the termination. As stated, since the costs of maintaining Dalton’s agency were known and clearly anticipated by Cellular South, a question remains as to whether Cellular South terminated Dalton’s relationship merely to avoid paying commissions to him. I would reverse and remand this case for a trial on the merits, especially on the question of whether Cellular South’s assertion — that maintaining the agency relation with Dalton would result in a detriment to its reputation and goodwill' — was pretextual or factual.
¶ 26. For the reasons presented, I dissent.
LEE, P.J., AND CHANDLER, J., JOIN THIS SEPARATE OPINION.

. The agreement refers to Cellular South as Cellular Holding.